Case number 18-2303, Beverly Swanigan et al. v. FCA US LLC et al. Argument not to exceed 15 minutes per side. Mr. Harris, you may proceed for the appellate. Good morning, ma'am. With the court's permission, I'd like to reserve five minutes for rebuttal. That would be fine. Before I move to the legal issues in this case, I'd like to briefly start by just explaining why what happened here was so severely prejudicial to my clients, the union members. This scheme did not just involve some low-level people occasionally putting a dinner on the corporate card, although it involved that too. The two key movers in this were Alphonse Iacobelli, who was in charge of all of Fiat's employee relations, including the relationship with Chrysler, and then on the UAW side, it was two straight vice presidents in charge of the Chrysler docket. It was General Holyfield and then Norwood Jewell. These are not low-level people. These are the decision makers. These are the prime movers. These are the people who have the ability to directly influence the whole relationship between the two companies. This went on for eight years, from 2009 to 2016. In the words of the United States, these aren't our words or our allegations. In the words of the United States, quote, the whole point of this scheme was to buy labor peace for Fiat and to obtain, quote, keeping the UAW, quote, fat, dumb, and happy. So I think it's important to view the case through this lens of we have an extensive record from the criminal proceedings that make clear just how bad this misconduct was. So turning to the legal issues, the union, I think the best way to think about the cause of action issues, the union, I think, to this day, has not disputed that it engaged in egregious breaches of the duty of fair representation. It had a duty to my clients to represent them as their exclusive bargaining agent, which it sold out in exchange for bribes. And so once we have that, we have sort of two paths. If those breaches by the union also implicated breaches of the collective bargaining agreement, then we do the hybrid, the 301. But if those don't implicate a collective bargaining agreement,  And so to start with the hybrid, as we explain in our brief, I think we have certainly enough to get past the pleading stage on the hybrid because what Fiat did here is the definition of a violation of the covenant of good faith and fair dealing. The other side wants to say we can't point to any breach of a term, any specific term, but that's the whole point of the covenant. It is an implicit term in every single contract. And the gist of it is you can't take actions that, while not expressly prohibited by the contract, will nonetheless undermine the other party's rights. And so what's interesting here, too, is I think, and my friends on the other side can speak for this themselves, but I don't think they actually dispute that there's a covenant of good faith and fair dealing. They just claim that it's unenforceable under 301. And I think that's just a misreading of the law. When you look at the Tenth Circuit Local 1912 case, which we cite, it describes the covenant as the very lifeblood of collective bargaining agreements. And the court later cites Williston for the proposition that the parties may not do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. So what you had is Fiat. The union is supposed to be our watchdog. It's supposed to be, on a daily basis, monitoring compliance, looking out for grievances, making sure that Fiat is living up to its obligations under the CBA, but instead Fiat co-opted that and is sending them money to remain, again, in the government's words, fat, dumb, and happy. And so – So suppose we agree with you. Can you – was this raised before the district court, this argument you're making now? Yes. So Mr. Baker, who argued it at trial, so I think – if you look at page 6 of Fiat's brief, they give a long block quote where they claim we waived this or didn't raise it. Literally the next two sentences after their block quote is where Mr. Baker says, no, this is – we don't have an express term, but we have common law. This is federal common law. And so when you look at cases such as Alice Chambers in the Supreme Court, the court's very clear that collective bargaining agreements are governed by federal common law, which is exactly where the covenant of good faith and fair dealing comes from. So I think – You don't actually – your counsel didn't actually argue this good faith and fair dealing language. He didn't use those words, no. It was just a reference to common law. Was it specifically pled? Well, I think it's – I think this looks more like a theory rather than a claim. We absolutely pled a hybrid claim. And so I think that I would view this as an argument in support of the claim. And in the factual allegation, which is the key thing we have to plead in the complaint, I think we easily cross any pleading standard, any Iqbal standard, any Trombley standard. And so I think the best way to view this is it's an – Why do you – I mean, Trombley is quite a bit stricter than our former pleading standards. And how do you satisfy Trombley when – I don't see the words in there about breach of good faith and fair dealing. I mean, how – okay, tell me how you satisfy Trombley as to good faith and fair dealing. Right. So I certainly think – again, I think we have certainly pled a breach of contract. Again, we mentioned the common law. And I think the point of the pleading is to ensure that the other side can defend itself. And we can talk in a minute about, you know, the harm arguments or the exhaustion arguments. But I think both the union and FIAT were perfectly capable of raising defensive arguments based on what we were alleging in the complaint in the district court. And so there's no question – I mean, again, given that they each had people go to jail for this, I don't think there's any dispute over the nucleus of facts that's giving rise to this dispute. And before turning to the harm and exhaustion arguments, if I could just quickly say a minute about a standalone against the union. So when you read this court's cases in Story, in Pratt, and in White, which we cite in our opening and reply brief, those cases are crystal clear that if you have a hybrid claim that ends up without – with the CBA piece falling away, you can still proceed directly against the union because there's no difference. The claim against the union in connection with the hybrid is the same as the claim against the union as a standalone. And so we think at the very least if we convince you on exhaustion and harm, we think we should be able to proceed against both. But at the very least, we think, again, given that the union has never disputed that it violated the duty of fair representation. Does it require an amendment to your complaint? I don't think so. But if that's something that's easily cured, I think – Well, I mean, you're not appealing a denial of a motion to amend here, are you? No. Well, I think we did notice that. I mean, that would certainly merge into the judgment. Merge into the judgment. Right. Okay. Was there a ruling below a motion to amend? No. So I think the key thing about the standalone against the union, if you look at count two of our complaint, is that part of the hybrid? Of course it is. But everything in count two of our complaint could also stand by itself against the union. I mean, could. But, I mean, is that part of the case now? That's all. Yeah. So our view is we don't believe we would need to amend to do that. But we think if there is just some technical pleading detail, we would respectfully request the ability to do that rather than have – You have to request the district court first. And there wasn't a request. And that's the problem. And we review the rulings of the district court. Right. We don't make it up up here. Right. So, again, our view, we definitely believe that the – every single thing in there could stand alone against the union. And so with just a couple minutes left, I'd like to very briefly address the harm and exhaustion points. So on harm, of course there's harm. As I said at the very start, you know, this scheme went on for eight years, involved the senior most executives, and involved more than a million dollars in bribes. We think the only thing that would be implausible is that this didn't result in some sort of harm. And so it's not our burden at the pleading stage to get down to the nickel of exactly how it might have harmed all the union members. But we think our complaint easily shows a reasonable inference that the union members could have been harmed, and especially when you add restitution, because the restatement and general principles of fiduciary law are very clear that when your fiduciary betrays you, at the very least you can seek restitution. And so we think we'd be able to establish economic harm, but at the very least we could try to get restitution. Finally, one quick word on exhaustion. So there's two types of exhaustion, one under the collective bargaining agreement, one under the union's internal procedures. The collective bargaining agreement is easy, because the Parker case is very clear that when there's allegations of collusion, we don't have to go to the union to say, will you represent us in arguing that the union and the company are colluding, or are breaking the law. And so I think with respect to the collective bargaining agreement, the fact that we're alleging union misconduct gets us out of that. And then on exhaustion of union procedures, I think the court's en banc decision in Chapman resolves it for us. Chapman is a summary judgment case. It talks about three potential reasons to excuse exhaustion, all of which we've alleged here. And we think it's just way too early for the district court to be making findings about, are the procedures adequate, can we get class relief, is the union hostile to us. Even Chapman, again and again, it talks about the record or it talks about what you have to prove or what you have to show. And so we would just respectfully request the ability on exhaustion to build a proper record and to make or not make the showing in Chapman, but we don't think it's something that can be decided on the pleadings. So with the court's permission, I'll reserve the rest of my time. Okay. Good morning, Your Honors. Julia Jordan from Sullivan and Cromwell on behalf of FCA US LLC. I want to begin today by first addressing the comments of the plaintiffs, the preliminary remarks. Are you dividing your time equally? Evenly. The preliminary remarks just underscore that the allegations in this action are really about an alleged violation of Section 302, which this court has recently held in Oldendorp. There is no private cause of action under that statute. As this court found there, there's no private cause of action, but that does not mean that the plaintiffs are left with no recourse. As this court has held, the plaintiffs have the option of filing a complaint with the NLRB, which these particular plaintiffs have, in fact, done, and their enforcement actions by the prosecutors. I will now turn my attention to plaintiffs' newly invented theory of a Section 301 breach of contract, which, as this court has noted or suggested, was raised for the first time on appeal. As Judge Drain found, the complaint here does not allege a breach of a violation of any provision of the contract. They didn't attach the contract to their complaint. They didn't mention a single provision of the contract. Instead, the complaint expressly alleges that a breach of contract theory based on an alleged violation of Section 302. Judge Drain's finding was not just based on the express terms of the complaint, but plaintiffs' express acknowledgment below that, quote-unquote, they were pleading a breach of contract on, quote-unquote, a violation of the federal labor law and not the express terms of the collective bargaining agreement. On appeal and apparent recognition of the legal insufficiency of that theory, plaintiffs are attempting to change course, claiming their breach of contract claim is based on an implied covenant of fair faith and fair dealing. Those words were never uttered in the district court, and we submit the argument has been forfeited. In any event, plaintiffs' new theory fails as a matter of law. It fails because this doctrine applies to the bad faith enforcement of contractual obligations. It does not apply to bad faith negotiations, and plaintiffs have not alleged any specific contractual obligation that was violated by FCA. Plaintiffs' new theory also fails because it is a well-established part of federal labor law that bad faith negotiations is an unfair labor practice that is subject to the exclusive jurisdiction of the NLRB. That was the finding of this court in Martin in 2001, and as stated by the First Circuit and Newspaper Guild in 1996 decision, extra-contractual claims regarding a duty to bargain in good faith falls under the NLRB jurisdiction. The federal court only has concurrent jurisdiction when the claimant makes a bona fide breach of contract claim. To hold otherwise would circumvent the primary jurisdiction of the NLRB over unfair labor practices by simply recasting statutory claims into contractual ones. That is precisely what plaintiffs are attempting to do here. They simply make no bona fide breach of contract claim. Now there is this Tenth Circuit decision, United Mine Workers of America decision, that expressly notes that the implied duty of good faith and fair dealing is inherent in all collective bargaining agreements. So to the extent it can be construed that the Second Amendment complaint or plaintiffs and their argument to the court made this, set forth this claim, do they have, can't they get by 12B6 and maybe? No. I submit that every single case, including the one you just cited, there is no case that plaintiffs have cited where the court has held an unfair labor practice standing alone without reference to any single provision of the contract constitutes a breach of contract claim. Specifically, in the Tenth Circuit case that you cited, Your Honor, it involved a specific clause in the collective bargaining agreement. Specifically, a successor clause which required the successor to assume the collective bargaining agreement if the initial employer transferred operations to a new employer. And the issue was whether they breached that specific provision. Plaintiffs here have never cited a provision of the contract in the complaint. And the key question there was whether the employer applied that specific provision in good faith. So does the Tenth Circuit suggest or say that collective bargaining agreements may include implied terms? It doesn't go that far in your view. I'm not saying that there's not an implied covenant of faith and fair dealing in connection with collective bargaining agreements. I'm saying it has to go hand in hand with a provision of the collective bargaining agreement. There's nothing in any of these collective bargaining agreements where the company, Fiat, agreed that they would not bribe the union. Well, that's correct. Is that what your argument is? In their brief that there's no such provision. There's no such provision in any way touching on it. You can't imply that into the CBA. No. And, in fact, this court in Young found that in connection with the 301 claim, which is very limited enforcement authority for the federal courts, you have to cite a specific contractual provision. And plaintiffs have not. I underscore that collusion that you want your reference, bribery. I mean, there are separate cause of accident under Section 302. And the plaintiffs have availed themselves of that separate recourse. Turning back to the Seventh Circuit's decision in Copeland, which is from 2012, there they held the contention engaged in superficial bargaining in violation of the collective bargaining unit. And, again, the court found it was subject to the exclusive jurisdiction of the NLRB. As stated by the Seventh Circuit, Section 301 provides for enforcement of deals that were made rather than those that were never made. Here, plaintiffs are primarily complaining about, quote, unquote, the rights that were allegedly bargained away from the plaintiffs. Most recently, Judge Suhari, in DeShelter action, rejected the precise claim that is now being belatedly made by plaintiffs here. There, the DeShelter plaintiffs made the same allegations but actually in the complaint versus on appeal. And they said that the alleged collusion violated the breach of the covenant of good faith and fair dealing. And in rejecting that theory, Judge Suhari said no. Under Section 301, there's a limited grant of authority and you have to plead a specific provision of the contracted issue, which plaintiffs did not do. And in so finding, the court cited this court's precedent. I see my time's up. Thank you. May it please the court, Abigail Carter on behalf of the UAW in this matter. I'm going to start with the plaintiff's failure to allege the second element of a hybrid 301 claim, which is the breach of the duty of fair representation. It is black letter law that a complaint has to have non-conclusory allegations establishing each element of a claim. For most types of claims, these include a wrong, an injury, and some evidence establishing causation. As this court held in Wood and Brown and the other circuits have confirmed, when union members sue their union for breach of the duty of fair representation, this means they must establish not just a breach, but also an injury and some causation linking the breach to the injury. There is no per se liability for breach of the duty of fair representation. Because the plaintiff's theory below was that they were injured by a complex stock sale, the complaint only made passing references to concessions and other agreements that were simply background allegations to the stock sale. Having abandoned the stock sale on appeal as a theory of injury, the plaintiffs are back to relying exclusively on these passing references to concessions or advantages that they allege were given in other unspecified agreements. It's important to note that notwithstanding their rhetoric, and they're careful on this, there are actually no facts establishing that there was actually a concession ever made. Undoubtedly, the plea agreements established FCA officials, who themselves had taken money for personal gain, said that their goal, one of their purposes, was to get a concession. Notwithstanding years of a government investigation, there's no evidence that a concession was actually made. So all plaintiffs have are a conclusory allegation in their complaint that confessions were made. But that is simply insufficient under ICBAL and TWALA. How much did Fiat pay in bribes? Allegedly paid in bribes? Allegedly. I mean, I don't actually offhand know the numbers of that. It was alleged in the complaint? No. Undoubtedly, the plea agreements probably say something about how much individual union members took. Certainly, the Chrysler official himself took much more for personal gain than was passed on to the union. But there's nothing about that in the complaint. You don't think you could infer from an allegation, if there is one of a large amount of money being paid in bribes, that there was some effect from that? You're saying there's just not enough in the complaint at this point to show that there was any kind of an effect of a concession? Yes, Your Honor. There's not enough in the complaint. ICBAL and TWAMBLEE require more. It's not crazy because although the government undoubtedly has been investigating with many more tools available than civil discovery, they haven't come up with anything. But even more than that, even if the court was willing to infer that someone somewhere made a concession, the plaintiffs still need to establish that that concession injured them. The complaint assumes there's nothing that says why you should believe and infer that these three plaintiffs were injured and how they were injured. Essentially, the plaintiffs are asking you to first infer a concession and then on top of that, infer an injury. But it's unspecified as to what that injury is. The complaint makes no allegations about how representative these plaintiffs are. There were hundreds of agreements between Chrysler and the UAW in this time period. Four major national agreements. There were agreements that affected one person. There were agreements that affected thousands of people. There were agreements that affected 10,000s of people. We don't know what those agreements are. We don't know which ones affected plaintiffs. The plaintiffs haven't alleged even what agreements they were bound by. Even if the three plaintiffs themselves were subject to the same agreements, there's nothing in the complaint about that. And based on that, even if this court was inclined to infer that some concession was made, there's nothing from which you can infer that a concession was made that harmed these three individual people. It's akin to an individual bringing a tort claim based on a manufacturing defect where it didn't actually hurt them or there's no evidence that it hurt them. Just because there's a wrong, in this case a breach, a wrong by a manufacturer, doesn't mean that you can just automatically infer that an individual person was injured. Unless there's an actual injury. The plaintiffs are asking this court to excuse them from foundational pleading requirements because the collusion was so offensive. And it was offensive, but that doesn't make it impossible for them to identify an injury and it doesn't mean that the standards that this court has set forth in cases like New Albany Tractor and that the Supreme Court has set forth suddenly, magically no longer apply to them. As Ms. Jordan indicated, there is currently another case pending before the Sixth Circuit in which former employees of FCA filed a lawsuit alleging an injury, and a very specific injury, an injury about a 2012 agreement involving their plant in Toledo, Ohio, an injury that caused some of them to lose a job and others to lose seniority rights. And those individuals were able to identify an injury, a loss of job or seniority rights, a breach of the duty, which was the bribery scheme that the plaintiffs have alluded to here, and elements of causation. They walked through, here's the 2012 agreement, here's how it was negotiated, here are the union officials who were involved in it, and here's why it's reasonable for us to believe that confessions were made that hurt us. There is nothing like that in this case. Even the cases that the plaintiffs rely on, like Cox out of the Seventh Circuit, which was another bribery scheme case, the court in that case didn't simply say, bribes, concession, end of story, you've pled. No, there was a very specific injury. People lost jobs. There was very specific evidence of confession, and the court walked through the evidence establishing that chain. Given these omissions in the complaint, the plaintiffs are not entitled to discovery in the hopes that with enough CBAs and enough emails and enough documents, they're going to uncover a confession somewhere that, unbeknownst to them, injured them. The Sixth Circuit and New Albany Tractor made clear that they have to allege specific facts, even if those facts are within the hands and the hearts of the defendants and their agents. At the end of the day, the plaintiffs are asserting that they, three, were injured by unidentified confessions, in unidentified agreements, and in unidentified ways. That doesn't satisfy no displeasing. It certainly doesn't satisfy Iqbal and Twombly. As to the remaining two issues, very briefly, I would say as to the stand-alone DFR claim, it's certainly our position that they never told the district court that they wanted an adjudication on the stand-alone claim. They said the opposite when asked. It was entirely pleaded as a hybrid case. As to failure to exhaust, very briefly I will say that, having admitted that they did not exhaust the internal union remedies, this court's Spicer decision requires them to allege facts sufficient to establish one of the exceptions. There is nothing but non-conclusive allegations about hostility and timing in their complaint, and the truth is the last step of the UAW process is an internal process by an outside body, the PRB, which this court has multiple times reaffirmed its neutrality and its broad remedial authorities. Accordingly, at a minimum, we believe that they failed to exhaust. And having alleged that no contract provision was breached, that no concessions were made by the union, and that there is no injury or harm that has been the fall of the plaintiffs in the complaint, the district court decision should be affirmed. Great. Thank you, Ms. Carter. Just a couple quick points in rebuttal. First, this argument that our claims are just a disguised 302 claim proves way too much. I mean, of course there are situations in which criminal and civil law overlap, and so to take Judge Bush's hypothetical, if the CBA had expressly said, thou shalt not bribe the other side, under their theory, you couldn't even enforce that because it would be enforcing a bribery prohibition. Is there a statement in the record that your sole claim for breach of the collective bargaining agreement is a 302 violation? Is that accurate or not? The complaint does refer to 302, but I think it refers to it. And I'm not defending that as a standalone, but I think there are references to 302, but I think when you look at the jurisdictional section, it clearly refers to 301, and there are certainly references to it. There was a representation made today that you represented to the court, to Judge Drain, I guess, at the hearing here that he asked, well, what is the breach of contract? And the statement that they quoted was the breach of contract is the 302 violation. Is that accurate or not? I believe that what the reference was was, I think the reference was it was, quote, a violation of labor law or something to that effect, which, again, I wasn't there, but I think that could certainly fairly be construed. You don't know what the record says on that? I mean, I'll look it up. No, no, no. It's a reference to labor law, and I think they're saying that that labor law reference was. Okay. The breach of the collective bargaining agreement is the breach of the law, and that's the sole basis of the breach of collective bargaining agreement? So there was some discussion before the district court, which I'm not standing here defending, about whether. . . I'm not defending. You don't have to defend it. I just want to know what the concession was. It's both. If what they said is not accurate, I'm giving you a chance to tell me it's not accurate. As far as I know, what they said is accurate, and if you can't rebut it, I'm going to accept it, I guess. Mr. Baker also said, so there were some references, which I'm not defending, to the notion that an unfair labor practice is sort of a per se contractual violation. Mr. Baker also said we have federal common law. We don't just need an explicit contract term. You can look at page 6 of Fiat's brief, and the next two sentences after that is where he says that. And he says we have federal common law. 301 doesn't just jettison the common law and throw it out the window. So I think that fairly presents the notion that you don't just need . . . That doesn't specify what common law he claims was . . . It doesn't specify that. And, again, I view these as . . . Again, I think both the union and Fiat knew from the start the factual allegations. I view that as the legal theory, which is not so much a pleading issue. We have to put them on factual notice. We have to . . . Well, under Tromble, you've got to give more than just factual notice. I mean, you've got to be more specific. You've got to be more precise. Right, and so to go to something like harm . . . So, you know, the union continues to argue that this was a sort of no harm, no foul situation. Well, let's look at what Mr. Iacobelli says. So in his sentencing memo, this is Record ID 1113, he specifically addresses this. And he says, both Fiat and the union officials contend the scheme, his words, had no effect. And then he rebuts that. He says, no, the whole point was the payments were made in an effort to obtain benefits, concessions, and advantages for FCA in the negotiation, implementation, and administration of the CBAs. Quote, that is exactly why they were made. So I don't know how that's not a plausible allegation under Iqbal when you have the leading conspirator for Fiat expressly rejecting the notion that this was just, you know, some money changing hands with no effect on anything. And the same point goes to Fiat also says, Fiat says correctly that we can't bring this implied to the covenant of good faith claim about the negotiations because that's not the contract. That's negotiations over the contract. Except, again, we have lots of allegations. The folks involved in this, it wasn't just the bargaining. It was also the day-to-day oversight. They're supposed to be the frontline defender. They're supposed to be watching out for the union members' interests. And Judge Bush, to go to your question, is there a term in the contract that forbids bribery and collusion? There isn't. But, of course, the whole agreement is premised on no bribery and collusion. The whole thing breaks down. It presumes an adversarial arm's length, you know, vigorous adversarial process. And when that doesn't happen, the whole thing breaks down. So I think if there's ever sort of a term or an obligation that would be implicit, this would be it. So the last thing I'll say is, and my co-counsel reminded me, there was a motion to amend which was rejected as futile. So we certainly think that there's a live issue. And, again, we – Has that been appealed? I didn't remember seeing it. I mean, we appealed the final judgment, and that would be in order, I think, going into that. Is that in your brief? Is that an issue in your brief? It is our very last issue. We say in the alternative we request leave to amend. Do you list it in the statement of issues? I believe we do, yes. You do? Okay. What issue is it in your statement of issues that the court abused its discretion by denying your motion to amend? And I want to be clear, it is an alternative argument. I mean, I take the position unless you put it in your statement of issues, you have not preserved the issue. You say it's there? Number three. And may – You may finish. And the very last thing I'll say is if you look at Supreme Court cases like VACA, the reason that enforcing the duty of representation is so important is because my clients, the employees, have no choice but to have the union as their exclusive bargaining representative. And the duty of fair representation exists because they're in this spot where they have no choice but to have the union with all this power, and so we respectfully ask that the court allow this proceed to allow them to get relief for the breaches of the duty. Okay. Thank you. Thank you, counsel. We thank all counsel for their arguments today. The case will be submitted.